## Hoffman *v.* George et al, Appellants

Argued April 27, 1944. Before KELLER, P. J., BALD-RIGE, HIRT, KENWORTHEY, RENO and JAMES, JJ. (RHODES, J., absent).

502

*Daniel H. McConnell,* with him *J. R. McNary,* for appellants.

*John E. Evans, Jr.,* of *Evans, Evans & Spinelli,* for appellee.

OPINION BY JAMES, J., July 15, 1944:

This is an action in trespass for personal injuries suffered when the automobile of appellee and the street car of appellant collided at a street intersection. After a verdict of $2,500 for the plaintiff, appellant moved for judgment n. o. v. which the trial judge refused. Appellant alleges error in that the plaintiff was guilty as a matter of law of contributory negligence, and that the evidence concerning the negligence of the motorman was insufficient to go to the jury.

Weighing the conflicting testimony in a light most favorable to the plaintiff, we cannot conclude that the trial judge erred in submitting the question of contributory negligence to the jury. The leading statement of the law applicable to the facts and frequently approved is found in *Kilpatrick v. Phila. Rapid Transit Co.,* 290 Pa. 288, 292: "Before a driver commits his car to the act of crossing, he should consider the distance of the car from the automobile; he may not rest on the assumption that it will stop at the crossing, but must pay attention to its approach. If, after making these observations, it would appear to the ordinarily prudent person that there is an opportunity to cross safely, it is not contributory negligence to attempt to do so. Absolute accuracy of judgment is not necessary. The test is a fairly reasonable one. The driver of a car is not bound to wait at a crossing until a car passes

merely because it is seen in the distance, but, as distance is one of the controlling factors entering into the determination of what is due care in a given case, we must be careful not to apply too strictly the rules of safety in a judgment thus reached, and determine from the circumstances that the operator took a chance. The operator may assume, and we must also consider, that when a trolley is in view, it will be operated with due care."

The testimony shows that plaintiff was driving at five P. M. of a November evening eastwardly up the grade at Callowhill Street in low or second gear, when she reached North Euclid Avenue. As her view was obstructed by a hedge and trees, she drove some three feet into the intersection in order to see clearly. Euclid Avenue is about 30 feet from curb to curb, and the two rails are equi-distant from the side, each one about 12½ feet from the curb. The street car was then below an alleyway on Euclid Avenue, about 139 feet away on her right, and plaintiff continued to go across the intersection because as she said, "I had no fear the street car would be that close to me" even though she did not try to estimate the speed of the trolley. Her own car was moving between five and ten miles an hour. Looking again when her car was just ready to go on the tracks, the street car was passing a garage about 100 to 125 feet away. The automobile was struck at the right rear side, and the force of the collision swung the vehicle around.

These facts do not reveal contributory negligence "so clear that there is no room for fair and sensible men to differ in their conclusion from the available data." *Shearer v. Pittsburgh Railways Co.,* 145 Pa. Superior Ct. 560, 21 A. (2d) 482, Perhaps if mathematical calculations of space and time were solely involved, the record would reveal accurately the presence or absence of carelessness, but the reasonableness of human vision,

discrimination, and decision must be left to the jury whose duty it is to determine the truth from the testimony and the geography of the location. The jury might justifiably conclude that plaintiff acted as an ordinarily reasonable person in assuming that she had adequate time to proceed into the intersection and cross the tracks without incurring any serious risk of being struck by the approaching street car. To judge from the lack of damage to the rear of the automobile her belief was almost good. Whether the trolley was 100 or 250 feet away is not a conclusive factor, though the distance between vehicle and street car is one of the various elements which the jury must consider in reaching a conclusion. The court cannot say that under every circumstance an automobile must not cross the tracks when a trolley is approaching 139 feet away. The propriety of the driver's decision cannot hinge upon one selected factor in a total situation.

Stress is laid upon the admission of the plaintiff that she could not tell how fast the street car was moving, and that she did not continue to look after she entered the tracks, but was watching the direction in which she was going. While the speed of both conveyances was an ingredient in the case, it was not essential that she should state the speed with which the trolley was approaching. *Shearer v. Pittsburgh Railways Co.*, supra; *Powell v. Pittsburgh Railways Co.*, 110 Pa. Superior Ct. 268, 168 A. 369; *Thompson v. Reading Transit Co.*, 100 Pa. Superior Ct. 294. The motorman supplied an estimate from which the jury could draw an inference whether plaintiff had acted reasonably in continuing forward. While perhaps a few decisions seem to insist that the driver "must continue to look while crossing," *Riley v. McNaugher*, 318 Pa. 217, 178 A. 6; *Porreca v. N. Cleaners & Dyers*, 146 Pa. Superior Ct. 504, 23 A. (2d) 72; *Woerner v. Heim*, 124 Pa. Superior Ct. 246, 188 A. 391, the impossibility of driving carefully with

eyes glued in one direction has been apparent: *Lewis v. Hermann,* 112 Pa. Superior Ct. 338, 341, 171 A. 109; *Cunningham v. Spangler,* 123 Pa. Superior Ct. 151, 156, 186 A. 173; *Bowers v. Gaglione,* 322 Pa. 329, 332, 185 A. 315; *Lochhead v. Nierenberg,* 143 Pa. Superior Ct. 507, 511, 18 A. (2d) 472. "The rule that plaintiff must 'look and continue to look' does not require something humanly impossible; nor is it a rule requiring observance with universal uniformity or with mathematical precision." *Cunningham v. Spangler,* supra. Nor is the rule invoked where it is not clear that the failure to look was a contributing cause, or a cause at all of the collision. *Grimes v. Yellow Cab Co.,* 344 Pa. 298, 25 A. (2d) 294. Since plaintiff looked and saw the street car 139 feet away, and after traveling another nine feet, a matter of a few seconds, she looked for the car again, a court cannot hold that plaintiff was beyond doubt negligent. She was under a duty to glance also in the other direction and to beware of automobiles behind and to the side. According to the evidence, plaintiff was driving slowly, in control of her car, and as she made out a case which does not conclusively disclose the existence of contributory negligence, the verdict must be sustained on that point.

The cases cited by appellant, *Hicks v. Phila. Rapid Transit Co.,* 53 Pa. Superior Ct. 174; *Pilgrim Laundry Co. v. Phila. Rapid Transit Co.,* 56 Pa. Superior Ct. 593, and *Evans v. Pittsburgh Rwys. Co.,* 283 Pa. 180, 128 A. 917, present aspects which reveal plaintiff testing an obvious danger. In the *Hicks* case, a *horse and wagon* twenty feet long proceeded to cross tracks when a street car at a distance of 125 feet was bearing down at a high rate of speed. The *Pilgrim* case involved a street car 100 feet off, while the *horse and wagon* were still ten feet from the rail. In the *Evans* case, the automobile was traveling slowly, and at the time it was 20 feet from the tracks, the trolley was 125 feet away, moving rapidly toward it.

We are not convinced that the verdict should be set aside because as a matter of law the motorman was not guilty of negligence. If the testimony of plaintiff is correct, the street car was traveling at least thirty miles an hour, while approaching an intersection. This was the last trip of the day for the motorman, on the way to the car barn, with but one passenger, a fellow motorman. Not only did the impact swing appellee's car around, but the trolley continued moving until its rear end was half way across the intersection. "The distance a car runs after colliding with an object is an important factor in reaching a conclusion as to speed." *Brennen et al. v. Pittsburgh Rwys. Co.,* 323 Pa. 81, 186 A. 743; *Justice v. Weymann,* 306 Pa. 88, 158 A. 873; *Donahue v. Phila. Rapid Transit Co.,* 293 Pa. 253, 142 A. 291.

Furthermore, the motorman might have been negligent in either failing to see appellant or stopping or slowing the street car. "If there is an object in the path of a street car a sufficient distance ahead for the car to stop, the motorman must not deliberately run the object down, but should govern the speed of the car so as to avoid an accident." *Dopler v. Pittsburgh Rwys. Co.,* 307 Pa. 113, 121, 160 A. 592; *Shearer v. Pittsburgh Rwys. Co.,* supra. "It is the duty of a motorman to keep a constant lookout ahead, and to have such control of his car as to avoid the dangers ordinarily incidental to its operation, and also to avoid such unusual and unexpected dangers as he saw in time to avoid." *Hamley v. Pittsburgh Rwys. Co.,* 345 Pa. 380, 384, 28 A. (2d) 911; *Cox v. Wilkes-Barre Rwy. Corporation,* 340 Pa. 554, 17 A. (2d) 367.

It is our conclusion that the issues of contributory negligence of plaintiff and the negligence of the motorman were questions of fact for the jury.

Judgment affirmed.